Venkat Guntipally, Movant
BOP Prison Reg. No. 20028-111
37817 Laurus Court
Fremont, CA 94536
Email: vgtmobile14@gmail.com



FILED
APR 01 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
SAN JOSE CALIFORNIA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES OF AMERICA,**

     **Respondent,**

    v.                  **Cv. Case No: 5:19-cv-00098-LHK**

**VENKAT GUNTIPALLY,**

     **Movant.**

## PETITIONER'S MOTION TO TAKE LEAVE TO CONDUCT DISCOVERY IN SUPPORT OF HIS BRADY CLAIMS

COMES NOW the Petitioner, Venkat Guntipally, pro se, and files his motion to take leave from the court to conduct discovery in support of his Brady Claims presented in his now-pending § 2255 proceedings; as follows:

### SUMMARY

Petitioner, Venkat Guntipally, in pro se, submitted his supplemental memorandum in support of his Brady claim in connection with his recent discovery that two of his codefendants have recanted their admissions of guilt in the crimes to which Mr. Guntipally plead guilty. In his memorandum, Mr. Guntipally identified the documents or classes of documents which the government withheld from him prior to his sentencing hearing and explained why they were material. ECF No. 306.

1

Mr. Guntipally's *Brady* claims bear on two key pillars in support of his 2255 issues:

(1) The government withheld exculpatory and impeachment evidence in violation so his due process rights under Brady v. Maryland.[1]

(2) In violation of his sixth amendment right to effective counsel, his defense attorney failed to inform him his codefendant had recanted her prior admissions of guilt to the crimes in which Mr. Guntipally plead guilty. Respectfully, because Mr. Guntipally plead guilty in fear that these codefendants were going to testify against him, should he exercise his right to a trial by jury, the information withheld from him denied him of his rights under the Fifth and Sixth Amendments to the United States Constitution.

Importantly, while Mr. Guntipally was able to highlight documents he obtained since he was sentenced which reveal clear breaches of the government's *Brady* obligations, and his right to effective counsel, those documents have the high potential to point to the existence of other documents which Mr. Guntipally has never seen. Mr. Guntipally therefore also seeks leave to conduct discovery, as noted *post*.

Dated: 4 / 1 /2019

Respectfully submitted,

Venkat Guntipally, Movant[2]
BOP Prison Reg. No. 20028-111
37817 Laurus Court
Fremont, CA 94536

---

[1]     373 U.S. 83 (1963)

[2]     Petitioner humbly submits that he is proceeding pro se, without the assistance of an attorney; and therefore, this Court is urged to construe his pro se pleadings more leniently than other motions. See, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (A document filed pro se is to be liberally construed).

**MR. GUNTIPALLY'S PROPOSED DISCOVERY REQUEST**
**FOR SPECIFIC DOCUMENTS**

## I. MR. GUNTIPALLY SEEKS LEAVE TO CONDUCT DISCOVERY IN SUPPORT OF HIS *BRADY* CLAIMS

### A. Legal Standard

Mr. Guntipally has filed a Motion to take leave to take discovery. Rule 6 of the Rules Governing Section 2255 Proceedings states that a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Federal Rules of Civil Procedure, or in accordance with the practices and principles of law." However, a party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories or requests for admission and must specify any requested documents. Rule 6 of the Rules Governing Section 2255 Proceedings. Good cause for a discovery order exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997).

The movant need not state a *prima facie* case for relief prior to seeking discovery. Rather, Rule (6)(a)'s "good cause" standard permits the use of discovery in order to establish a *prima facie* claim for relief. *Bracy v. Gramley*, 520 U.S. 899, 908 (1977). "Good cause" is shown even if the petitioner's allegations support "only a theory ... [that] is not supported by any solid

3

evidence at the time of the discovery request." *Id.* Upon a showing of good cause, it is an abuse

of discretion not to grant discovery. *Id.* at 909.[3] *See also, Blackledge v. Allison,*431 U.S. 63, 78,

82-83 (1977) (a federal habeas petitioner is "entitled to careful consideration and plenary

processing of [his claim], including full opportunity for presentation of the relevant facts");

*Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969).

　　　The Court should permit a scope of discovery which is "reasonably fashioned to elicit

facts necessary to help the court to dispose of the matter as law and justice require." *Harris v.*

*Nelson*, 394 U.S. 286, 290 (1969), quoting 28 U.S.C. § 2243.

## II.　　APPLICABLE LEGAL PRINCIPLES OF *BRADY* AND ITS PROGENY

　　　In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that under the due

process clause of the Fourteenth Amendment, the prosecution has a constitutional duty to

disclose to the defense all favorable evidence material to guilt or punishment. *Id.* at 87.

Nondisclosure of exculpatory or impeaching evidence under *Brady* violates due process by

"depriving a defendant of liberty through a deliberate deception of court and jury . . . [which is]

as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by

intimidation." *Id.* at 86 (citation omitted).

　　　To prevail on a *Brady* claim in post-conviction proceedings, a defendant must

demonstrate the following:

> 1. The evidence at issue must be favorable to the accused, either because it is
> exculpatory or impeaching;

---

[3]　　　In *Bracy*, petitioner was convicted of murder before a state court judge who was later found
guilty of extortion. On habeas, petitioner alleged that the judge was biased against him in order to hide the
fact that he took bribes in other criminal cases. Both the district and the appellate courts denied requests
for discovery on the grounds that there were insufficient factual allegations to support such a claim. The
Supreme Court reversed, holding that the allegations were sufficient to entitle petitioner to discovery of
sealed transcripts of the trial judge's corruption trial, the prosecutor's materials, and the judge's ruling in
other cases to search for a pattern of prosecution bias, and to depose the judge's associates.

4

2. The evidence must have been suppressed by the State, either willfully or inadvertently; and

3. The evidence must be material – i.e., prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Anderson v. Calderon,* 232 F.3d 1053, 1062, (9th Cir. 2000), *cert. denied,* 534 U.S. 1036 (2002).

## III.    Legal Analysis

### A.    Good Cause for Discovery

Mr. Guntipally's request for discovery is made in good faith and not merely for a fishing expedition. For instance, in a "supplemental" petition and declaration, Mr. Guntipally addressed the government's violating *Brady v. Maryland*, 373 U.S. 83 (1963), where – in the months since Mr. Guntipally was sentenced to a 30-month term of imprisonment, critical new evidence has come to light showing that his constitutional rights were violated. ECF Nos. 306. This evidence has been uncovered as a result of Motions filed by two of Mr. Guntipally's co-defendants. Specifically, Mr. Guntipally declares that newly discovered evidence shows that the government withheld the recantations of two alleged coconspirators, Sandhya Ramireddi and Sunitha Guntipally. Mr. Guntipally's *Brady* claims have merit.

### B.    The Ninth Circuit's Per Se Rule Allows a Post-Plea *Brady* Challenge

In *Sanchez v. United States*, the Ninth Circuit adopted an expansive view of a petitioner's *Brady* rights during plea bargaining.[4] The Ninth Circuit began by discussing whether a petitioner may raise a *Brady* claim to vacate a guilty plea, noting that the Second, Sixth, and Eighth Circuits had already answered in the affirmative.[5] The Ninth Circuit likewise allowed post-plea Brady challenges, finding that a guilty plea cannot be knowing and voluntary if made without

---

[4]    50 F.3d 1448 (9th Cir. 1995).
[5]    *See id.* at 1453.

knowledge of material evidence suppressed by the prosecution.[6] However, rather than following the Sixth Circuit's method of considering the totality of the circumstances in determining whether a guilty plea was valid, the Ninth Circuit held that a *Brady* violation automatically renders a plea unknowing and involuntary.[7] The court found that such a rule makes sense because "'a petitioner's decision whether or not to plead guilty is often heavily influenced by his appraisal of the prosecution's case.'"[8]

The court also noted that prohibiting petitioners from asserting *Brady* claims to challenge guilty pleas would tempt prosecutors to "deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas."[9] While the court appeared to believe it was following the other circuits, it failed to note that the Second Circuit had not found that a *Brady* violation prevented a plea from being knowing and voluntary, but had instead found that a *Brady* violation constitutes official misconduct that negates an otherwise knowing and voluntary plea.[10] Hence, the Ninth Circuit effectively adopted a "per se" rule whereby a *Brady* violation *automatically* precludes a knowing and voluntary plea.[11]

### C. The Failure To Disclose Material Exculpatory Evidence Precludes a Knowing and Voluntary Guilty Plea

---

[6] *See id.*

[7] *See id.* ("A waiver cannot be deemed intelligent and voluntary if entered without knowledge of material information withheld by the prosecution." (internal quotation marks omitted)).

[8] *Sanchez*, 50 F.3d at 1453 (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)).

[9] *Id.*

[10] *Compare id.* ("Three circuits have held that a petitioner can argue that his guilty plea was not voluntary and intelligent because it was made in the absence of withheld *Brady* material."), *with Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) ("[W]e conclude that even a guilty plea that was 'knowing' and 'intelligent' may be vulnerable to challenge if it was entered without knowledge of material evidence withheld by the prosecution."). The court also adopted the same standard of materiality as the Second Circuit in *Miller*, finding that *Brady* evidence is material only when there is a reasonable probability that the petitioner would not have pleaded guilty had he received the undisclosed information. *See Sanchez*, 50 F.3d at 1453.

[11] *See Sanchez*, 50 F.3d at 1453.

Accepting that *Ruiz* allows *Brady* challenges for the failure to disclose material exculpatory evidence prior to a guilty plea, the question then becomes how to determine whether that failure renders a plea invalid. the Ninth Circuit's per se approach, finding that a *Brady* violation automatically renders a guilty plea unknowing and involuntary.[12]

The Ninth Circuit's per se approach is the best application of the *Brady* rule to plea bargaining. Under this structure, if the court finds that the prosecution fails to disclose material exculpatory evidence prior to the entry of a guilty plea, the plea is automatically rendered unknowing and involuntary. The standard of materiality is imported from *Bagley*[13]: a *Brady* violation renders a plea invalid if there is a reasonable probability that the result of the plea negotiations would have been more favorable had the petitioner received the undisclosed evidence. Unlike the Second Circuit's approach, this standard addresses the central question of constitutionality for a guilty plea: whether it was truly knowing and voluntary. Moreover, there is no gray area where *Brady* is violated but the plea is still considered knowing and voluntary. Due process is violated where material exculpatory evidence is withheld, and any plea entered without knowledge of that evidence is not truly knowing and voluntary.

Moreover, Given the extremely high percentage of cases ending in guilty pleas and the importance of exculpatory evidence in the decision to plead guilty, disclosure of material exculpatory evidence is necessary to ensure fair and just plea bargaining.

As recognized by the Ninth Circuit, the per se approach is justified by substantial policy considerations. First, the petitioner's appraisal of the prosecution's case is crucial to an informed decision on how to plead. When discussing the knowing and voluntary requirement for a valid guilty plea, the Supreme Court has repeatedly emphasized that the petitioner must have

---

[12]     *Id.* 50 F.3d 1448 (9th Cir. 1995)
[13]     United States v. Bagley, 473 U.S. 667 (1985)

7

"sufficient awareness of the relevant circumstances and likely consequences" of his guilty plea. This does not mean that the petitioner must be aware of every piece of evidence, or every argument the prosecution intends to make; but it cannot be said that a petitioner has sufficient awareness of the relevant circumstances if he pleads guilty to a crime without knowing that the prosecution possesses evidence establishing his factual innocence.

Second, a rule to the contrary would incentivize prosecutors to withhold material exculpatory evidence in order to compel a petitioner to plead guilty. Prosecutors are incentivized to obtain convictions, and as a prosecutor knows that their of securing a conviction will decrease at trial because she will have to disclose exculpatory evidence, she will be motivated to conceal that evidence in order to obtain a conviction through plea bargaining.

Third, it is naive for courts and commentators to assume that innocent petitioners will not plead guilty. Overcharging and mandatory minimum sentencing create an overwhelming pressure on petitioners to plead guilty. In addition to the risk of harsher punishment, there are other costs incurred by a petitioner who goes to trial, including attorney's fees, time, stress and emotional harm, and the ignominy of having to publicly stand trial. The pressure to plead guilty is strong for both minor and major offenses. For a minor offense, pleading guilty may be a way to avoid jail time; for a major crime, it might allow a petitioner to avoid the death penalty. While Rule 11 and jurisprudential safeguards theoretically prevent innocent petitioners from pleading guilty, the reality is that a guilty plea is a rational choice for many innocent petitioners.[14]

Fourth, the standard of materiality that is used to review both *Brady* and ineffective assistance of counsel claims suggests that petitioners should be able to assert post-plea

---

[14] As a prime example, in Mr. Guntipally's 2255 Memorandum, he argued that "Defense Counsel's misrepresentation of material facts, withholding facts, and exerted pressure on Mr. Guntipally to induce guilty plea constitutes ineffective assistance of counsel. See, Exhibit 1 (Sworn Declaration of Venkat Guntipally)." See, Mr. Guntipally's 2255 Memorandum at page 9, ¶6.

exculpatory *Brady* claims. In *Lafler*[15] and *Frye*,[16] the Supreme Court continued to apply the standard from *Bagley*, holding that a conviction must be vacated if there is a reasonable probability that, but for his attorney's errors, the result of the proceeding—in this case, plea bargaining—would have been more favorable to the petitioner. From this standard, it is evident that a guilty plea does not waive claims of constitutional deficiencies that materially affect a petitioner's decision whether to plead guilty. Like deficient advice from an attorney, the suppression of material exculpatory evidence during plea bargaining impedes a petitioner's rational decision making and precludes a knowing and voluntary plea. Therefore, just as a guilty plea or a conviction must be vacated where the ineffective assistance of counsel materially affects the petitioner's decision to plead guilty, the same should be true where the prosecution's suppression of exculpatory evidence materially affects that decision.

Finally, Justice Scalia's criticism that having to stand trial cannot constitute prejudice will not apply to post-plea Brady claims, because the suppression of material exculpatory evidence will rarely, if ever, lead to the rejection of a plea offer. When a petitioner is deprived of exculpatory evidence, he views the government's case as being stronger than it actually is, and is therefore compelled to accept a seemingly favorable plea offer to avoid trial. It is difficult to envision a situation in which the suppression of evidence establishing a petitioner's factual innocence would lead him to prefer trial over a plea to a lesser charge or sentence. Pre-plea exculpatory Brady violations impel petitioners to plead guilty, thereby depriving them of the "gold standard of American justice": a full criminal trial.[17] Such violations cause substantial prejudice, especially when they lead innocent petitioners to plead guilty; but this prejudice can

---

15    Lafler v. Cooper, 132 S. Ct. 1376
16    Missouri v. Frye, 132 S. Ct. 1399, 1413 (2012)
17    Lafler v. Cooper, 132 S. Ct. 1376, 1398 (2012) (Scalia, J., dissenting).

9

be avoided by requiring the pre-plea disclosure of material exculpatory evidence. Thus, while Justice Scalia bemoaned the "constitutionalization" of plea bargaining,[18] allowing exculpatory Brady challenges to guilty pleas is necessary to protect the constitutional rights of petitioners and preserve the legitimacy of today's plea-based criminal justice system.

**D.    The Prosecutor's Duty Extends to Producing *Brady* Materials Known Only to Those Assisting the Prosecution, Including Investigators and Police**

The prosecutor's duty under *Brady* includes the duty to seek out and disclose favorable evidence known to others acting on the prosecution's behalf, including the police. *Brady* applies not only to information known to the prosecutor, but also to "evidence 'known only to police investigators and not to the prosecutor.'" *Strickler*, 527 U.S. at 281-82, quoting *Kyles*, 514 U.S. at 438); *accord*, *Jackson v. Brown*, 513 F.3d 1057, 1068-69 (9th Cir. 2008) ("The Supreme Court has made abundantly clear ... that the prosecutor's duty to disclose evidence favorable to the accused extends to information known only to the police.").

**E.    *Brady* Material Includes Both Exculpatory and Impeachment Evidence, and May Relate Either to Guilt or Punishment**

*Brady* encompasses all evidence "favorable to the accused and 'material either to guilt or to punishment,'" *United States v. Bagley*, 473 U.S. 667, 674 (1985), quoting *Brady*, 373 U.S. at 87, and includes both direct and impeachment evidence. *Id.* at 676. *Brady* information is not limited to information which is directly admissible at trial, particularly where that information may be used on cross-examination to impeach a witness. *See Wood v. Bartholomew*, 516 U.S. 1 (1995) (suggesting otherwise inadmissible polygraph results could be subject to *Brady* if they met prejudice standard). "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of events affecting credibility falls within th[e] general rule [of

---

[18]    Missouri v. Frye, 132 S. Ct. 1399, 1413 (2012) (Scalia, J., dissenting).

10

*Brady*]." *Giglio v. United States*, 405 U.S. 150, 154 (1972). Evidence "need not have been independently admissible to have been material. Evidence is material if it might have been used to impeach a government witness, because 'if disclosed and used effectively, it may make the difference between conviction and acquittal.'" *Carriger v. Stewart*, 132 F.3d 463, 481 (9th Cir. 1997), quoting *Bagley*, 473 U.S. at 676; *accord, Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.").

**F.    A Defendant Is Entitled Under *Brady* To All Favorable Information, Including Actual Documents, Not Just To The Government's Summaries**

It is elementary that the defense is in the best position to know how to use impeaching or exculpatory information. The "need to develop all relevant facts in the adversary system is both fundamental and comprehensive." *United States v. Nixon*, 418 U.S. 683, 709 (1974). Therefore, absent narrow grounds for withholding, the government must furnish the defense with complete material documents, such as interviews or notes of interviews with witnesses, rather than selective summaries. "Summaries of conversations prepared by the government are not the equivalent of actual notes for several reasons." *United States v. OK Park*, 319 F.Supp.2d 1177, 1179 (N.D. Cal. 2004), *cert. denied*, 547 U.S. 1169 (2006).

> First, summaries invariably involve a process of interpretation and characterization. That is the essence of a summary. Different individuals may hear or read the same words and summarize their meaning differently. Second, context, emphasis, and subtle distinctions may not be precisely captured by summaries. For example, it may be significant that a witness repeated an answer multiple times. The general topics being discussed at the time a statement is made may also explain the statement. Third, because the government is not necessarily privy to the defense's strategy, seemingly innocuous or immaterial statements by a witness may not be included in a summary. These seemingly innocuous or immaterial statements may, because of different facts known to the defense, be

important for purposes of impeachment.

Id. See also, *Paradis v. Arave*, 240 F.3d 1169, 1173 (9th Cir. 2001) (defendant prejudiced under Brady by prosecution's failure to produce full notes of interviews with a government witness). Likewise, the government must produce complete interview memoranda, not just selected content which the government deems exculpatory. *United States v. Bergonzi*, 216 F.R.D. 487, 499, 502 (N.D. Cal. 2003). Cf. *United States v. Sedaghaty*, 728 F.3d 885, 904-905 (9th Cir. 2013) (Even under the Classified Information Procedures Act, a court may allow the government to substitute summaries for documents only "if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."), quoting 18 U.S.C. app. 3 § 6 (c)(1).

### G.    Materiality and Admissibility

The fundamental question in the materiality analysis is whether, despite the prosecution's errors, the defendant "received ... a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. A "showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.* (emphasis added). Consistent with this fundamental statement of the test, evidence is "material" under *Brady* when it is either admissible or would have led to admissible evidence. *Coleman v. Calderon*, 150 F.3d 1105, 1116–17 (9th Cir.), *rev'd on other grounds*, 525 U.S. 141 (1998); *United States v. Kennedy*, 890 F.2d 1056, 1059 (9th Cir. 1989). Because each additional *Brady* violation further undermines confidence in the jury's decision, the errors must be analyzed "collectively." *Kyles*, 514 U.S. at 436.

### IV.    THE *BRADY* MATERIALS WITHHELD FROM THE DEFENSE AND WHY THEY ARE MATERIAL

A prosecutor's duty to disclose material exculpatory evidence is a cornerstone of constitutional criminal procedure. It is typically a self-monitored duty, inasmuch as neither the court nor the defense has any way of knowing generally what has not been disclosed. Yet, from time to time it does come to the defense's attention after pleading guilty that material exculpatory evidence has been withheld. When that occurs, the defendant is entitled to a new trial (or when the evidence is material only to sentencing, to a new sentencing). Such has occurred here with regard to two major pieces of evidence: (a) the recanted statements of Sandhya Ramiredd, dated December 29,2017; and (b) the recanted statements of Sunitha Guntipally, dated December 18, 2018. Further discovery is needed to determine what additional relevant documents may exist. Mr. Guntipally's discussion below is organized under three categories, each one bearing materially and critically on his defense.

These categories are:

A. Documents impeaching codefendant Sandhya Ramiredd's credibility;

B. Documents impeaching the other codefendants credibility;

C. Documents pointing to evidence that's exculpatory in nature.

## V.    MR. GUNTIPALLY HAS MADE A SHOWING OF GOOD CAUSE TO GRANT DISCOVERY

Upon a showing of good cause, it is an abuse of discretion not to grant discovery. *Id.* at 909.7 *See also, Blackledge v. Allison,*431 U.S. 63, 78, 82-83 (1977) (a federal habeas petitioner is "entitled to careful consideration and plenary processing of [his claim], including full opportunity for presentation of the relevant facts"); *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969). Looking at Mr. Guntipally's circumstances, the Court should permit a scope of discovery which is "reasonably fashioned to elicit facts necessary to help the court to dispose of the matter as law and justice require." *Harris v. Nelson*, 394 U.S. 286, 290 (1969), quoting 28

U.S.C. § 2243. Hence, Mr. Guntipally seeks discovery within the province of these § 2255

proceedings in order to determine the full scope of the government's *Brady* violations herein.

Specifically, Mr. Guntipally seeks the following discovery:

> 1. All documents related to each of his codefendant's veracity, including all
> documents considered to be of exculpatory or impeachment value.

### CONCLUSION

For the foregoing reasons, and for those stated in Mr. Guntipally's *Supplemental*

*Memorandum of Law* in support of his Brady claims, he respectfully requests that the Court (1)

grant him leave to obtain the above-listed discovery and permit further discovery and

expansion of the record as needed, (2) order an evidentiary hearing so that Mr. Guntipally may

prove up his claims, and (3) grant such further relief as the Court deems just and proper.

DATE: 4 / 1 /2019

Respectfully submitted,

Venkat Guntipally, Movant
BOP Prison Reg. No. 20028-111
37817 Laurus Court
Fremont, CA 94536

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, 4 / 1 /2019, a true and correct copy of the foregoing was furnished by United States Mail to:

U.S. Attorney's Office
Heritage Bank Building
150 Almaden Blvd. Suite 900
San Jose, CA 95113

DATE: 4 / 1 /2019

Respectfully submitted,

Venkat Guntipally, Movant
BOP Prison Reg. No. 20028-111
37817 Laurus Court
Fremont, CA 94536